UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ISAAC HARRIS,

Plaintiff,

Civil Action No. 23-13082

v.

Mark A. Goldsmith
United States District Judge

MICHIGAN DEPARTMENT OF CIVIL RIGHTS, *et al.*,

David R. Grand
United States Magistrate Judge

Defendants.
_________________________________/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS (ECF No. 16)**

*Pro se* plaintiff John Isaac Harris ("Harris"), filed a 42 U.S.C § 1983 complaint against the Michigan Department of Civil Rights ("MDCR"), the Michigan Civil Rights Commission ("the Commission"), and a number of employees of both agencies, namely Lori Vinson, Cari Cooper, Keesha Garrett, Portia L. Roberson, Zenna Faraj Elhasan, Gloria E. Lara, Regina Gasco-Bentley, Anupama Kosaraju, Richard Corriveau, Daniel M. Levy, Marcelina Trevino, and Tracey Barbee (collectively "Defendants"). (ECF No. 1). Harris alleges that Defendants violated his Fourteenth Amendment due process and equal protection rights by failing to adequately investigate and process a civil rights complaint he filed with the MDCR against Eastern Michigan University ("EMU") and several EMU

employees related to allegations he had made about being subjected to racial discrimination and harassment while enrolled at EMU. (ECF No. 1).[1]

Before the Court is Defendants' motion to dismiss Harris' complaint under Eleventh Amendment immunity and qualified immunity, and for failure to plead a viable § 1983 claim. (ECF No. 16). Harris filed a response, and Defendants filed a reply. (ECF Nos. 18, 21).

The Court finds that oral argument will not aid it in resolving the motion, and declines to hold a hearing. *See* E.D. Mich. LR 7.1(f)(2).

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion to dismiss Harris' complaint **(ECF No. 16)** be **GRANTED**.

## II. REPORT

### A. Background

This case stems from a series of events that took place during Harris' time as a graduate student in EMU's Master of Public Administration ("MPA") program. In short, Harris had claimed that Dr. Raymond Rosenfeld and other professors conspired to fail him out of the MPA program by engaging in unethical practices that created a hostile learning environment and subjected him to racial discrimination and retaliation for engaging in protected activity. Since then, Harris has unsuccessfully pursued multiple avenues for relief on his claims, including the U.S. Department of Education, Office of Civil Rights,

---

[1] The case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 15).

the MDCR, and state and federal courts, *see Harris v. Morris*, No. 17-1373, 2017 WL 8776683 (6th Cir. Oct. 26, 2017).

The instant case concerns Harris' filing of a complaint with the MDCR, and the MDCR's alleged improper handling of his complaint. Specifically, Harris claims that the MDCR's investigation into and ultimate dismissal of his complaint violated his due process and equal protection rights under the Fourteenth Amendment. The following background is based on a liberal construction of Harris' complaint, including the exhibits attached thereto.

The MDCR is a government agency that "investigates and resolves discrimination complaints and works to prevent discrimination through education programs that promote voluntary compliance with civil rights laws." (ECF No. 1, PageID.2). On December 18, 2018, Harris filed what he characterizes as an online "complaint"[2] with the MDCR, alleging that he experienced "educational retaliation" by EMU. (ECF No. 1, PageID.6). On December 20, 2018, Harris received a response letter from MDCR Customer Service Representative Tracy Barbee ("Barbee"), requesting additional information on his allegations by December 30, 2018 "[i]n order to continue the processing of [his] concern . . ." (*Id.*; ECF No. 1-2, PageID.61). On December 28, 2018, Barbee sent Harris a "Statement of Concern," informing him that "[t]he nature of your concern is unknown.

[2] In his response, Harris attaches a copy of his "MDCR-CWI Civil Rights Service Request" form submitted to the MDCR on December 18, 2018, alleging "Educational retaliation" as the nature of his complaint. (ECF No. 18-1, PageID.662). Notably, the form states at the bottom that "[a] department representative will contact you to answer your questions, discuss your concern in detail to determine the action to be taken, or to suggest alternatives to address your concern. THIS IS NOT A COMPLAINT FORM. Thank you for your inquiry." (*Id.*) (emphasis in original).

Unsuccessful attempts have been made to reach you regarding your concern via telephone [] and electronic correspondence. . . . A formal civil rights complaint has not been filed about the concern described above." (*Id.*, PageID.6).

On January 8, 2019, Barbee sent Harris a second "Statement of Concern," stating:

> The first statement of concern sent to you on December 28, 2018, stated that we had not spoken and therefore your contact was being closed. However after re-reading your email communication, your contact was reopened in order to explain why your allegation of race discrimination cannot be investigated by this agency. You stated in your email to this agency that you have attempted to resolve the alleged discriminatory treatment you were subjected to by [EMU's] educators[,] even addressing the matter in the federal court Eastern District of Michigan. You have also stated that you were denied full due process. This agency does not have jurisdiction to investigate any allegations that were brought to the attention of the courts. Therefore, a complaint will not be processed to investigate the allegations of race discrimination by the respondent.

(ECF No. 1-2, PageID.62). The statement informed Harris of his right to "appeal the department's decision not to process a formal complaint regarding the above concern . . . in writing by February 7, 2019." (*Id.*, PageID.63).

On January 23, 2019, Harris filed a "request to an Appeal of the Michigan Department of Civil Rights Department . . . based on the unsuccessful communications with [] Barbee." (ECF No. 1-2, PageID.65).

On March 29, 2019, MDCR Reconsideration Attorney Marcelina Trevino ("Trevino") sent Harris a "follow-up letter to [her] email sent on March 15, 2019 regarding [his] SOC [Statement of Concern] reconsideration request," seeking to "confirm [his] allegations to assist in potentially drafting a complaint with [the MDCR]." (ECF No. 1-2, PageID.82). Her understanding of his allegations was that:

> You allege that you have been unlawfully discriminated against due to your race and in retaliation for filing a previous internal complaint in 2014. More specifically, your professor Dr. Raymond Rosenfeld in PLSC 630 created a hostile environment due to his unfair grading, including derogatory and degrading comments regarding your coursework and harassing e-mails. Respondent has also attempted to intimidate you and encourage you to drop your courses. You feel you are being unlawfully retaliated against now with unfair grading due to your past internal complaints against Dr. Rosenfeld in 2014. Is this correct?

(ECF No. 1-2, PageID.82).

On May 7, 2019, Trevino informed Harris that his reconsideration request had been granted (ECF No. 1, PageID.8), and on May 13, 2019, a formal MDCR complaint was filed on his behalf, which alleged that he is "Black" and was "harassed as recent as December 19, 2018, due to [his] race, and in retaliation for engaging in protected activity from at least 2014 to as recent as 2018" by a "Caucasian educator" at EMU, including being subjected to a "hostile learning environment," "disrespected," and "denied due process when [he] grieved respondent's attempt to issue me a failing grade." (ECF No. 1-2, PageID.80).

On May 28, 2019, MDCR Civil Rights Investigator Karmisha McBeth ("McBeth") notified Harris that his formal complaint had been mailed to EMU, that EMU had been asked to "reply to [his] allegations," and that the MDCR "will contact [him] after receipt and review of [EMU's] reply." (ECF No. 1-2, PageID.81).

On June 27, 2019, EMU sent McBeth a position statement responding to Harris' complaint, stating that "there is a long history of [Harris] alleging race-based harassment, discrimination and/or retaliation against EMU," but that each time EMU investigated, it arrived at the conclusion that Harris "has chosen – and apparently, continues to choose –

to transform his disagreement with EMU over its evaluations of, and decisions related to, the quality of [his] coursework in a multitude of baseless allegations of discrimination, harassment and retaliation against EMU." (ECF No. 1-4, PageID.117-19).

Following a period in which Harris alleges he did not hear back from the MDCR in a timely manner (ECF No. 1, PageID.9), on September 10, 2019, he received a letter from MDCR Civil Rights Investigator Cari Cooper ("Cooper"), stating that she was assigned to investigate his complaint and that "[i]t is necessary that [she] discuss the complaint with [Harris by September 26, 2019] in order to proceed with the investigation." (ECF No. 1-2, PageID.83). On October 9, 2019, Cooper emailed Harris "to discuss [his] complaint over the telephone and obtain [his] rebuttal," but Harris replied that "he was not going to discuss something that he felt was an essential matter over the telephone." (ECF No. 1, PageID.9-10).

As a result, Harris had an in-person meeting on November 5, 2019, with Cooper, MDCR Civil Rights Manager Keesha Garrett ("Garrett"), and "two other ladies working in this department," in order to leave no "unanswered questions regarding his concerns and to provide any documents or evidence of substantial relevance" for the investigation. (*Id.*, PageID.10-11). Harris alleges that Cooper appeared "very inexperienced at her job" and that his case "was being used for her to get some practice with handling investigations for the MDCR." (*Id.*, PageID.11). Later, on December 18, 2019, Harris received an email from Cooper "asking him questions that he felt were nonsense because they had been addressed during the meeting process on November 5, 2019." (*Id.*).

On March 2, 2020, Harris emailed Garrett, asking "[w]hy are there Civil Rights Act protection[s] and [a] Civil Rights Department if they appear to be protecting the individuals that are committing a clear violation of these rights[,] and when fair preponderance or preponderance of evidence has been provided," and "when will this investigation be completed." (ECF No. 1-2, PageID.84). The next day, Garrett responded via email that "[a]t this time, Ms. Cooper is awaiting a response from [EMU] regarding [his] proposed resolution offer," and "[i]n the event that [his] complaint is not resolved, Ms. Cooper will proceed with conducting the investigation" and that his "case will be thoroughly investigated." (*Id.*).

On June 22, 2020, Garrett updated Harris that his complaint was still "pending investigation." (ECF No. 1-2, PageID.86).

On August 28, 2020, Cooper responded to Harris' emails requesting updates, stating that she had "been on a leave of absence, and [] returned to the office this week," but that she believed "the negotiation/settlement matter failed," and thus would "refresh [herself] with the case and determine the next steps in the investigation." (ECF No. 1, PageID.12).

On September 22, 2020, Cooper emailed Harris, stating that she "contacted [EMU] to schedule witness interviews to complete the investigation," and that she would provide "another update" once the interviews were scheduled. (*Id.*, PageID.13).

On October 29, 2020, Cooper emailed Harris, informing him that "[t]his case is eligible for [a] resolution fact-finding conference whereby the investigator brings both parties [] together for the purpose of either resolution or the completion of the investigation," which would be held via Zoom. (*Id.*, PageID.13). On December 1, 2020,

Harris responded that "it was on December 18, 2018, when he first made his initial contact" with the MDCR, and Cooper was "assigned to the investigation of [his] complaint" in September 2019, but "within all of the time that [she has] been assigned to this claim, [she has] not been able to resolve the matter or care[d] not to because of this public University's status." (*Id.*, PageID.13-14).

The next day, on December 2, 2020, Cooper responded that the investigation was still "in progress," and provided updates that "[o]n Monday, November 23rd, [she had] conducted two witness interviews with Dr. Bernstein and Dr. Klein," and "[n]ext week, [she] will provide [her] supervisor and [their] staff attorney and investigative report with the evidence in file for their review." (ECF No. 1-2, PageID.97-98).

In January 2021, Harris claims he attempted to escalate his concerns to MDCR Director James White, and contacted Cooper, Garrett, and various other state officials, alleging patterns of unlawful behavior in the handling of his complaint. (ECF No. 1, PageID.15). On January 6, 2021, MDCR Director of Law and Policy Daniel M. Levy ("Levy") emailed Harris, stating that the MDCR was "looking into the status of the investigation and why it has not been resolved to date," but "note[d] preliminarily that [his] claims are somewhat complicated because [they] need to separate out those items on which [he] chose to file in federal court," as they "can no longer pursue the same claims [he] raised there." (ECF No. 1-2, PageID.93).

After this point, Harris claims he did not hear back from the MDCR until he "received the Notice of Disposition and Order of Dismissal from the spurious and fraudulent investigation that was not conducted impartially according to the MDCR

policies based on the available evidence provided by him." (ECF No. 1, PageID.17). Specifically, on April 22, 2021, the MDCR mailed Harris a "Notice of Disposition and Order of Dismissal," stating:

> This complaint alleges that the respondent discriminated against the claimant in violation of civil rights laws. The investigation of this complaint included a review of all information obtained during the investigation. Based upon all the evidence in the file, e.g. any applicable statements of witnesses, analysis of comparatives and review of documents, the department determined that there is insufficient evidence to proceed. It is therefore ordered that this complaint is dismissed.

(ECF No. 1-1, PageID.59). The notice informed Harris that he "may request of the department a reconsideration of its refusal to issue a charge . . . within 30 days after the date of mailing of the notice of disposition," and that, ultimately, "[a]ny party claiming to be aggrieved by a final order of the commission or the department, including without limitation a refusal to issue a charge, may appeal to the circuit court of the State of Michigan . . . within 30 days of the date of service of an appealable order." (ECF No. 1-1, PageID.59).

Based on the above, Harris commenced this action, asserting that the dismissal of his complaint "was an unlawful act by MDCR," as it "didn't conduct an impartial investigation and, under section 1983, [is subject to] liability for failure to act by not rendering proper service by way of investigative due process when it attempted to change the narrative of [his] formal complaint because the MDCR failed to act according to its policies . . ." (ECF No. 1, PageID.17-18; *see also id.*, PageID.28 ("the spurious and fraudulent investigative process conducted by the department investigator(s) . . . and

supported by individuals with authority . . . ignored their own department of civil rights, civil rights commission, organization, practice, and procedure highlighted . . . when they didn't interview Dr. Raymond [] Rosenfeld, who was the primary respondent . . ."). He argues that "[t]he State of Michigan is liable for its inaction by being deliberate and reckless when it failed to act" to properly address his complaint. (*Id.*, PageID.29). He argues that he "provided sufficient evidence for his complaint to proceed through the processes of the MDCR according to the Chronology of Activity record of the nearly two-year spurious and fraudulent supposed investigation," but that the "handlers of [his] MDCR complaint broke the law because it did not comply with its own policies" that it would "conduct an impartial investigation of all available evidence." (*Id.*, PageID.29, 34). As a result, Harris seeks monetary damages. (*Id.*, PageID.34).

Defendants now move for dismissal, arguing that they are entitled to Eleventh Amendment and qualified immunity, and that Harris fails to state a claim for relief.

**B. Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough

facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### C. Analysis

#### a. Eleventh Amendment Immunity

In their motion, Defendants first argue that Harris' claims against the MDCR and the Commission must be dismissed on the basis of Eleventh Amendment immunity. (ECF No. 16, PageID.434). The Eleventh Amendment to the United States Constitution bars private individuals from suing a state for money damages in federal court unless the state consents or Congress has otherwise abrogated the state's immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). A state only waives its immunity when it "clearly declares that it intends to submit itself to the jurisdiction of the federal courts" with an unequivocal waiver. *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 667 (1999).

A state's sovereign immunity extends to bar any lawsuit where damages would be paid from the state treasury, including lawsuits against state instrumentalities. *See Edelman*, 415 U.S. at 663. Both the MDCR and the Commission are "instrumentalit[ies] of the state of Michigan" and are thus entitled to invoke sovereign immunity with respect to Harris' section 1983 claims against them. *See Gasca v. Michigan Dep't of C.R.*, 2023 WL 4996567 at *2 (E.D. Mich. June 26, 2023) (citing M.C.L. § 16.575 (statute creating the Michigan Department of Civil Rights)); *Moll v. Parkside Livonia Credit Union*, 525 F. Supp. 786 (E.D. Mich. 1981) (stating that the Michigan Civil Rights Commission is "a state agency authorized to administer the Elliot-Larsen Act").

In this case, Defendants correctly argue that "neither the State, the Commission, nor the MDCR has consented to this suit." (ECF No. 16, PageID.436). The MDCR and the Commission thus properly invoke their Eleventh Amendment immunity to dismiss Harris' claims against them. *See Emery v. Mich. Dep't of Civil Rights*, No. 15-11467, 2016 WL 1090429, at *2 (E.D. Mich. Mar. 21, 2016) ("[I]t is clear that Plaintiff's ADA claims against Defendant MDCR are barred by Eleventh Amendment immunity . . . ."); *Clark v. Lafayette Place Lofts*, No. 14-12519, 2015 WL 871659, at *4 (E.D. Mich. Feb. 26, 2015) ("Plaintiff's claim against the MDCR is squarely barred by the Eleventh Amendment"). Harris has not identified any case law or other legal authority showing that the State has waived its sovereign immunity or that Congress has abrogated the State's immunity.

Accordingly, Harris' claims against the MDCR and the Commission should be dismissed as barred under Eleventh Amendment immunity.

**b. Qualified Immunity**

Defendants next argue that Harris' remaining § 1983 claims against them in their individual capacities must be dismissed as barred by qualified immunity. (ECF No. 16, PageID.437). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether government officials are entitled to qualified immunity, courts must consider: "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the [official's] conduct violated a constitutional right? Second, is

the right clearly established?" *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

As to the second prong, "[f]or a right to be clearly established, 'existing *precedent* must have placed the statutory or constitutional question beyond debate.'" *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 368 (6th Cir. 2022) (emphasis in original) (quoting *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021)). Put differently, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). "The plaintiff bears the burden of showing that the right was clearly established" and, to meet such a burden, "must provide on-point caselaw that would bind a panel of [the Sixth Circuit]." *Bell*, 37 F.4th at 367-68 ("a plaintiff cannot point to unpublished decisions to meet this burden").

Defendants argue that Harris "failed to plead sufficient factual or legal information to support plausible claims of equal protection and due process violations" based on the MDCR's handling of his complaint, such that his claims must be dismissed under the first prong of the qualified immunity analysis. (ECF No. 16, PageID.439). They further argue that, even assuming Harris could state cognizable claims, his complaint is "bereft of factual and legal support" to show that the MDCR's handling of his complaint was a "clearly established" violation of his due process and equal protection rights. (*Id.*, PageID.440). For the reasons discussed below, the Court agrees that Defendants are entitled to qualified immunity on both Harris' due process and equal protection claims.

i. Due Process Claims

To establish a procedural Due Process Clause claim in a § 1983 action, "plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . . , (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)).

Here, the gravamen of Harris' due process claim are his allegations that Defendants "didn't conduct an impartial investigation" and "did not comply with [the MDCR's] policies" to properly review all of the evidence in processing his complaint. (ECF No. 1, PageID.18-34).[3] Such allegations fail to state a cognizable due process claim against Defendants.

In addressing similar due process claims against the Equal Employment Opportunity Commission ("EEOC"), the Sixth Circuit has held that there is no "cause of action for violation of plaintiff's civil rights aris[ing] from the alleged mishandling of [his] discrimination complaint." *Milhous v. Equal Emp. Opportunity Comm'n*, 1998 WL

[3] For example, as best can be discerned, Harris alleges that the MDCR failed to "interview the primary [EMU] respondent Dr. Raymond [] Rosenfeld" (ECF No. 1, PageID.18); "attempted to change the narrative of [his] formal complaint" (*id.*, PageID.18, 23); "allowed the respondent to submit documents and argue points that had nothing to do with the complaint filed against Dr. Rosenfeld" (*id.*, PageID.20); focused on incorrect time-frames when conducting investigation (*id.*, PageID.23); failed to verify incorrect statements made in investigative interviews (*id.*, PageID.26-27); and generally failed to investigate within a timely manner (*id.*, PageID.12-13, 16-17).

152784, at *1 (6th Cir. 1998) (unpublished table decision); *see also Reed v. EEOC*, 1996 WL 636171, at *1 (6th Cir. 1996) ("There is no private cause of action for the improper investigation or processing of a discrimination charge."); *Georator v. EEOC*, 592 F.2d 765, 768 (4th Cir. 1979) (holding that, because the EEOC's determination of reasonable cause as to a discrimination complaint is non-binding, non-final, investigative and not adjudicative in nature, a failure to receive favorable determination does not represent any loss that implicates the Due Process Clause). Harris has not provided any reason why this principle does not apply equally to the MDCR or its employees, and indeed, when confronting similar claims against the MDCR specifically, the Sixth Circuit has held that "[t]o the extent that [a plaintiff] intended to assert a claim against the MDCR related to the processing of his discrimination charge, he lacked a cause of action." *Clanton v. Sam's Club*, 2022 WL 18781403, at *1 n.1 (6th Cir. Apr. 22, 2022); *see also Rhoades v. Kasich*, No. 18-4034, 2019 U.S. App. LEXIS 30595, at *4-5 (6th Cir. Oct. 11, 2019) ("With respect to Rhoades's allegation that the [Ohio Civil Rights Commission] and its employees did not conduct a proper investigation of his housing discrimination complaint and failed to follow its own procedures, such allegations do not implicate the Due Process Clause."); *Rhoades v. Ohio C.R. Comm'n*, 2007 WL 1822283, at *5 (N.D. Ohio June 22, 2007) ("[A]ny claimed 'breach of duty' to investigate [against the Ohio Civil Rights Commission] does not give rise to a constitutional violation amounting to the deprivation of property or liberty interest because dissatisfied plaintiffs have an alternative to seek redress of the alleged discriminatory conduct by *de novo* review.").

Based on the above, Harris' allegations that Defendants "didn't conduct an impartial investigation" regarding his grievance against EMU and "under section 1983 [faced] liability for failure to act by not rendering proper service by way of said investigative due process" (ECF No. 1, PageID.18), simply fail to state a cognizable claim of a constitutional due process violation.[4]

Moreover, even assuming Harris could state a viable due process claim, Defendants are correct that his complaint is "bereft of factual and legal support" to satisfy the second prong of the qualified immunity analysis. (ECF No. 16, PageID.440). Against the body of caselaw detailed above, Harris has failed to meet his burden to show that it was "clearly established" that Defendants' alleged failure to adequately, fairly, or timely investigate and/or process his complaint amounted to a violation of his due process rights. Indeed, Harris did not allege any facts demonstrating he was denied the opportunity to be heard, or that he was denied alternate avenues to address EMU's alleged discriminatory conduct.[5] *See Rhoades*, 2007 WL 1822283, at *5 ("Due process is satisfied if there is an opportunity

---

[4] The Court also notes that to the extent Harris bases his due process claim on Defendants' alleged failure to follow the MDCR's own policies, no such failure would itself give rise to Section 1983 liability. *See Grinter v. Knight*, 532 F.3d 567, 574–75 (6th Cir. 2008) ("Failing to follow proper procedures is insufficient to establish an infringement of a liberty interest." (citing *Olim v. Wakinekona,* 461 U.S. 238, 250, 103 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.")). *See also Coleman v. Martin*, 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005) ("[T]he failure of a prison, or the state, to follow its own policies and procedures does not amount to a constitutional violation.").

[5] For instance, Harris retained the right to appeal the MDCR's decision to the circuit court, per the Elliot-Larsen Civil Rights Act of 1976, Mich. Comp. Laws. § 37.2606(1), and also had the ability to independently file a lawsuit against EMU directly in the circuit court, Mich. Comp. Laws. § 37.2801.

to be heard before any final order of the agency becomes effective.") (quotation omitted). Rather, Harris merely asserts objections to the MDCR's process while investigating his complaint and its ultimate decision to dismiss his complaint. (ECF No. 1).[6]

Accordingly, Defendants are entitled to qualified immunity on Harris' due process claims against them in their individual capacities, and such claims should be dismissed.

ii. Equal Protection Claims

To show an equal protection violation under the Fourteenth Amendment, the threshold element of such claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'") (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

[6] To the extent Harris argues in his response brief that a conspiracy to interfere with the civil rights of others, pursuant to 42 U.S.C. § 1985, constitutes a due process violation, that argument fails. He has not introduced specific factual allegations of such a conspiracy, and his own conclusory assertions are insufficient. *See Rashada v. Woods*, 2023 WL 3881067, at *11 (W.D. Mich. June 8, 2023) ("a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient."). Nor, for the reasons stated herein, has Harris shown the MDCR's eventual denial of his complaint would constitute an unlawful interference with his civil rights.

Here, Harris makes generalized claims in his complaint that he was treated differently based on his race, but he fails to show that any fundamental right was burdened or that a similarly situated non-Black comparator was treated differently throughout the MDCR investigative process. Rather, Harris' complaint merely alleges in conclusory fashion that, for example, the MDCR committed "unlawful violations" to "equal protection of the law" (ECF No. 1, ¶ 9, PageID.3); the "investigative report of the Michigan Department of Civil Rights violated . . . equal protection according to the Fourteenth Amendment" (*id.*, PageID.17); the "chronology of activity [by the] Michigan Department of Civil Rights" violated "equal protection according to the Fourteenth Amendment" (*id.*, PageID.29); and he was subjected to "intentional discriminatory action" (*id.*, PageID.30). Such allegations, however, "amount to conclusory and unadorned assertions that, consequently, are not well-pleaded, and not entitled to a presumption of truth at this stage in the litigation." *See Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d 365, 379 (6th Cir. 2011); *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Accordingly, Harris fails to allege valid equal protection claims against Defendants in their individual capacities, and such claims should be dismissed.

## III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' motion to dismiss Harris' complaint **(ECF No. 16)** be **GRANTED**.

Dated: August 5, 2024
Ann Arbor, Michigan

s/David R. Grand
DAVID R. GRAND
United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2). A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 5, 2024.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager